## UNITED STATES COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| ADAM SINGER, individually and on behalf of all other persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE PRICELINE GROUP, INC. and HILTON WORLDWIDE, INC,<br><br>Defendants. | CIVIL ACTION NO. 3:15-cv-1090<br><br>CLASS ACTION COMPLAINT |

## CLASS ACTION COMPLAINT

Plaintiff Adam Singer, individually and on behalf of all persons similarly situated, for his complaint against Defendants The Priceline Group, Inc. and Hilton Worldwide, Inc., alleges as follows:

### INTRODUCTION

1.      This is a civil action seeking monetary damages, restitution and declaratory relief from Defendants, The Priceline Group Inc. ("Priceline") and Hilton Worldwide, Inc. ("Hilton") (collectively, "Defendants") arising from the unfair and unconscionable operation and disclosures regarding the "Name Your Own Price" hotel booking service.

2.      In today's era of ubiquitous internet-based hotel booking, which allows for immediate price comparisons between dozens of hotels in a given locale, hotels like Hilton and third-party booking websites like Priceline compete for customers by purportedly offering the lowest room rates online.

3.      Priceline takes this a step further and offers a "Name Your Own Price" ("NYOP") option, whereby a consumer can make an offer to pay a certain price for a hotel stay at an

1

unnamed hotel, including Hilton hotels, in a particular location.

4.     With NYOP, the consumer is informed that, if Priceline accepts the bid amount, the consumer will be provided with a hotel stay for the bid amount, plus certain specified fees and taxes.

5.     However, Priceline "matches" NYOP users with hotels for which <u>it knows their bids are insufficient.</u>  Only at some point after a consumer arrives at the hotel for which his "winning bid" was accepted is he informed that the bid amount was actually not sufficient, and the consumer will be required to pay more for the right to stay at the hotel in the form of additional, undisclosed "resort fees."

6.     Consumers making internet bookings for hotel rooms on Priceline.com's NYOP option were thus placed into hotel rooms, the true, total price of  which was never agreed to or revealed prior to booking.  That is despite the fact that, prior to booking, individual hotel operators like Hilton fully inform Priceline of the mandatory fees, including so-called "resort fees," that consumers will be required to pay as part of any hotel stay.

7.     This conduct renders the "Name Your Own Price" option illegal and deceptive. Due to Defendant's conduct, a consumer is not "naming his own price" for a hotel stay at all.

<u>**JURISDICTION AND VENUE**</u>

8.     This Court has original jurisdiction of this action under the Class  Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this  Court has original jurisdiction because the aggregate claims of the members of the  putative Class exceed $5 million, exclusive of costs, and at least one of the  members of the proposed Class is a citizen of a different state than Defendants.

9.     Venue properly lies in this district pursuant to 28 U.S.C. § 1391 because

Defendants do business in this district and have imposed substantial resort fees on consumers in this district.

## THE PARTIES

10.     Plaintiff, Adam Singer, is a resident of Suffern, New York.

11.     Hilton Worldwide, Inc. is a corporation incorporated in Delaware which maintains its principal places of business and worldwide headquarters in McLean, Virginia. Hilton Worldwide, Inc. claims to have more than 550 hotels and resorts in more than 80 countries.

12.     The Priceline Group, Inc. is a corporation incorporated in Delaware that operates a commercial travel website known as Priceline.com, as well as four other primary brands.  Its principal place of business is Norwalk, Connecticut.

## CLASS ALLEGATIONS

13.     Plaintiff brings this action on behalf of himself and all others similarly situated pursuant to Fed. R. Civ. P. 23.  This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

14.     The proposed Classes are defined as:

All natural persons who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, a) had a Name Your Own Price bid for a hotel stay accepted by Priceline and b) were subsequently charged additional mandatory resort fees by the assigned hotel (the "Priceline.com Class").

All natural persons who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, a) had a Name Your Own Price bid for a Hilton hotel stay was accepted by Priceline and b) were subsequently charged additional mandatory resort fees by Hilton (the "Hilton Subclass").

The Class and Subclass are referred to collectively as the "Classes."

15.     Plaintiff reserves the right to modify or amend the definition of the proposed

Classes before the Court determines whether certification is appropriate.

16.     Excluded from the Classes are Defendants, its parents, subsidiaries, affiliates, officers and directors, any entity in which Defendants have a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

17.     The members of the Classes are so numerous that joinder is impractical. The Classes consist of thousands of members, the identity of whom is within the knowledge of and can be ascertained only by accessing Defendants' records. A database of Defendants' customers is maintained by Defendants and includes customer names, contact information, date of stay, and charges paid. Thus, records are readily available for purposes of identifying all members of the Classes and providing notice of the instant class action to all Class members and determining the nature and size of each member's claim.

18.     The claims of the representative Plaintiff are typical of the claims of the Classes in that the representative Plaintiff, like all Class members, was charged resort fees by Defendants after having booked a hotel stay on Hilton.com or Priceline.com. The representative Plaintiff, like all putative Class members, has been damaged by Defendants' misconduct in that she has been assessed and/or will continue to be assessed unfair and unconscionable resort fees. Furthermore, the factual basis of Defendants' misconduct is common to all Class members, and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Classes.

19.     There are numerous questions of law and fact common to the Classes and those common questions predominate over any questions affecting only individual Class members. Such treatment will permit a large number of similarly situated persons to prosecute their

common claims in a single action simultaneously, efficiently, and without duplication of the expenses that numerous individual actions would entail. No difficulties are likely to arise in the management of this class action that will preclude its purpose as a class action, and no superior alternatives exist for the fair and efficient adjunction of this controversy. Without a class action, Defendants will likely retain the benefit of their wrongdoing and may continue the course of their actions, which could result in further damages.

20.     Among the questions of law and fact common to the Classes are:

a.     The terms of Name Your Own Price hotel room purchase contracts;

b.     Whether Defendants breached the contract, including the covenant of good faith and fair dealing;

c.     The proper method or methods by which to measure damages, and

d.     The equitable relief to which the Classes are entitled.

21.     Plaintiff's claims are typical of the claims of other Class members, in that they arise out of the same wrongful resort fee policies and practices employed by Defendants. Plaintiff has suffered the harm alleged and has no interests antagonistic to the interests of any other Class member.

22.     Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of consumer class actions. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Classes.

23.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Defendants,

no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the Class members will continue to suffer losses and Defendants' misconduct will proceed without remedy.

24.     Even if Class members themselves could afford such individual litigation, the court system could not.  Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

## COMMON FACTUAL ALLEGATIONS

**A.     Hilton**

25.     According to its website, Hilton owns and operates 550 hotels around the world.

26.     Hilton offers hotel rooms for booking on Priceline.com, including through Priceline's NYOP option.

27.     At certain of its hotels, Hilton charges a mandatory "resort fee."  Hilton charges or charged a resort fee at several of its properties nationwide, especially for hotel properties located in supposed "vacation" areas such as Puerto Rico, Hawaii, Arizona, Florida, and Las Vegas, Nevada.

28.     As part of an ongoing business relationship with Priceline, Hilton informs Priceline of the mandatory resort fee it assesses at each property in advance of the time Hilton makes hotel rooms available for sale on Priceline.com.

29.     Hilton is aware that Priceline knowingly matches NYOP consumers with Hilton hotels at "bid" amounts that do not include mandatory resort fees.

**B.     Priceline**

30.     Priceline.com is a website, operated by Priceline, that claims to offer discount rates for travel purchases such as airline tickets and hotel stays.

31.     Priceline has approximately 9,500 employees and earned revenues of $6.79 billion in 2013.

32.     Priceline does not supply travel services directly; instead, the company acts as a broker or agent for hotels, airlines, and other direct travel services providers, such as Hilton.

33.     Priceline offers consumers the ability to book a hotel room using a traditional, transparent booking model, and also has an opaque "Name Your Own Price" option, in which consumers submit a "bid" for a room on a given date or dates in a given location, and Priceline provides the name of the hotel after booking.  This litigation exclusively concerns hotel room bookings made through the "Name Your Own Price" option.

34.     With Priceline's "Name Your Own Price" option, a consumer bids a price he or she is willing to pay for a hotel room.  Priceline then matches the consumer with a hotel that supposedly willing to accept the consumer's bid price.

35.     At the time of but just prior to booking, Priceline discloses the "Total Cost," including "Taxes and Fees." But, resort fees are not included in either "Total Cost," or "Taxes and Fees."

36.     Priceline knows (a) that consumers booking hotel rooms at certain hotels offered on Priceline.com will be charged a mandatory resort fee; and (b) the precise amount of that resort fee.

37.     Indeed, Hilton and other hotels provide Priceline with the amount of mandatory resort charges associated with any given hotel stay, *prior* to consumer "Name Your Own Price" bids.

38.     As such, Priceline could easily include mandatory resort fee amounts in "Total Cost," or "Taxes and Fees." Priceline intentionally chooses not to do so.

39.     Priceline's decision to omit such information was an attempt to lure reasonable customers with favorable but inaccurate price terms.

**C.     Plaintiff Was Improperly Charged Resort Fees**

40.     On February 24, 2011, Plaintiff Singer used Priceline.com's Name Your Own Price option to bid $107 per night for two nights for two hotel rooms near San Juan, Puerto Rico, from February 26, 2011 to February 28, 2011.

41.     Prior to placing a NYOP bid on a hotel room, Plaintiff Singer viewed prominent representations on Priceline's website that indicated Priceline would match him only with hotels willing to accept his bid price.

42.     Priceline immediately accepted his Plaintiff Singer's $107 per night per room bid and matched Plaintiff with the El Conquistador Resort, Waldorf Astoria Resort in Fajardo, PR, a Hilton Hotel.

43.     Priceline matched Singer at a rate that did <u>not</u> include the mandatory resort fee assessed for stays at the El Conquistador Resort.

44.     It was improper and unconscionable for Priceline to knowingly match Singer with a hotel for which it knew Singer's bid was insufficient.  In reality, Priceline should have matched Singer with the El Conquistador Resort only if that hotel was willing to accept a bid amount that <u>included</u> resort fees.

45.     Plaintiff Singer would not have proceeded with the booking had he known that the hotel with which he was to be matched did not actually accept his $107 per night per room bid amount.

46.     At the final website screen before the purchase was confirmed, and while Plaintiff Singer still did not know the identity of his matched hotel (though Priceline did), Priceline presented Plaintiff with a webpage that showed the following price information:

| | |
|---|---|
| "Offer Price Per Room Per Night" | $428.00 |
| "Subtotal" | $428.00 |
| "Taxes and Service Fees" | $60.68 |
| "Total" | $488.68 |

47.     H o w e v e r ,  the "Total" quoted by Priceline was not a true "total," as it did not include the mandatory resort fee it knew would be assessed for stays at the El Conquistador Resort, despite Priceline's knowledge that a mandatory resort fee of $14 per room per day would be assessed to Plaintiff Singer by Hilton.

48.     At the time he checked out of the El Conquistador Resort, Plaintiff was assessed an additional mandatory or non-optional "Resort Fee" of $66 over and above the amount he agreed to pay as the total for his stay during the booking process on Priceline.com.

49.     This mandatory resort fee added approximately 15% to the base room rate quoted by Priceline at the time of booking.

50.     Below the pricing information on the Priceline.com webpage on which the price was quoted, a section entitled "Important Information" stated, in relevant part, that

**Priceline will immediately charge your credit card the total cost of your stay. Rooms purchased through priceline cannot be cancelled, changed, or transferred and refunds are not allowed.** If your offer is not accepted, your credit card will not be charged.  The reservation holder must present a valid photo ID and credit card at check-

9

in.  The credit card is required for any additional hotel specific service fees or incidental charges or fees that may be charged by the hotel to the customer at checkout.  These charges may be mandatory (e.g. resort fees) or optional (parking, phone calls or minibar charges) and are not included in your offer price.

51.     In fact Priceline would <u>not</u> charge all monies it knew to be a mandatory feature of that stay.

52.     Priceline did not charge Plaintiff's credit card for the mandatory resort fees that it knew were a true part of the room rate at the El Conquistador, and were thus a true part of the "total cost of your stay" that Priceline claimed it "immediately" charged Singer's credit card for.

53.     Pursuant to the above terms, Plaintiff was not allowed to cancel the reservation when he (much later) found out about the additional mandatory fee.

54.     While Priceline states that mandatory charges like "resort fees" are "not included in your <u>offer price</u>," it does <u>not</u> state that such mandatory charges are not included in the so-called "Total" or "Taxes and Service Fees"—two line items listed in addition to the "Offer Price Per Room Per Night."  Priceline did *not* warn consumers that resort fees are not included in the "total" or "taxes and service fees" sections.

55.      Plaintiff understood that if Priceline knew resort charges would be assessed—if they existed at all—Priceline had already included them in the Total disclosed prior to booking.

56.     At most, the representation indicated that, where Priceline was not aware of resort charges at a property, the Total may not include those.

57.     At the bottom of the purchase screen, Plaintiff was presented with a box in which he was to assent to the following statement:  "I have read, accept and agree to abide by priceline.com's terms and conditions and privacy policy."

58.     The phrases "terms and conditions" and "privacy policy" were hyperlinked.

59.     Plaintiff was not required to click on either hyperlink in order to proceed.

60.     The contents of the hyperlinks were never affirmatively presented to Plaintiff.

61.     Plaintiff was never placed on inquiry notice that the "terms and conditions" contained disclosures or contract terms that directly contradicted Priceline's express representations and promises concerning the amount of "Total," and "Taxes and Service Fees."

62.     Priceline could easily have programmed its Name Your Own Price bidding system to account for resort fees which it knew full well would be charged—and thus match consumers only with hotels truly willing to accept their bid amounts.  Instead, it affirmatively chose to delete resort fees from "Total" "Taxes and Service Fees," in order to make it appear to consumers that they were getting a better deal than they truly were.

63.     After Plaintiff Singer made his booking, Priceline sent him a contract of adhesion via email.  *See* Exhibit A, attached hereto (the "Booking Contract.").

64.     The e-mailed Booking Contract prominently noted a "Total  Room Cost" of $488.68, which included the room rate of $107.00 amounting to a room subtotal of $428.00 plus "Taxes and Fees" of $60.68. In the Booking Contract, for the first time, Priceline notified Plaintiff of the hotel with which he was matched – the Hilton El Conquistador. Yet, the "Total Room Cost", and "Taxes and Fees" that were agreed to still did not include the mandatory resort fee assessed for stays at the El Conquistador Resort.

65.     The Booking Contract was a binding contract between Plaintiff and Defendants for a stay at the El Conquistador resort.

66.     The Booking Contract did not reference or incorporate contract terms other than those within the four corners of the contract.  It did not link to any other contract terms or disclosures.

67.     The Booking Contract did not inform Plaintiff Singer that the room rates, "Taxes and Fees," and "Total Room Cost" did not include certain mandatory charges like resort fees—

11

indeed, it made no mention of mandatory resort fees at all.

68.     The Booking Contract provided Plaintiff Singer with the right to stay two nights at the El Conquistador Resort for a total of $488.68, and superseded any other agreements or disclosures Plaintiff had with Priceline or Hilton.

69.     Priceline in no way disclosed or included resort fees in the Booking Contract.  Nor did it inform Plaintiff in any way that El Conquistador would assess mandatory resort fees.

70.     Hilton knew, or should have known, that Priceline intentionally matched consumers with Hilton properties not truly willing to accept consumers' bid amounts.  Hilton knew, or should have known, that Priceline issues binding contracts for stays at Hilton properties that include no mention whatsoever of resort fees.

71.     Hilton knew, or should have known, that Plaintiff Singer was issued a contract that did not include the resort fee at the El Conquistador Resort.

72.     Yet Hilton assessed $14 per room per day _more_ than the quoted "Taxes and Fees" and "Total Room Cost" when it assessed Plaintiff and his travelling partner mandatory resort fees at the time of checkout.

73.     By the plain terms of the Priceline.com booking contract, Hilton had no right to charge mandatory resort fees on that booking.

74.     By recovering an additional, baseless fee in the form of the resort fee, Defendants are able to reduce its advertised room rates by the amount of the resort fee without any negative impact when price-conscious consumers compare rates across hotels.  In other words, Defendants devised a mechanism through the use of resort fees whereby they advertise what appears to be a low room rate but then secretly recoup an additional charge.

75.     The scheme provides direct benefits to both Defendants.  It allows Priceline.com

to increase the number of bookings made on its website, and allows Hilton to a) increase the number of guests at its properties, and b) extract more revenue from those guests.

### D. The FTC Has Stated That Practices like Defendants' Are Deceptive and Urged Providers to Display All Mandatory Charges in the Base Room Rate Disclosed to Consumers

76.    In November, 2012, the FTC sent a letter to 22 hotel chain operators warning that online reservation sites may violate the law by providing a deceptively low estimate of what consumers can expect to pay for their hotel rooms.   A copy of the letter is attached as Exhibit B hereto.

77.    According to the FTC letters, "One common complaint consumers raised involved mandatory fees hotels charge for amenities such as newspapers, use of onsite exercise or pool facilities, or internet access, sometimes referred to as 'resort fees.'  These mandatory fees can be as high as $30 per night, a sum that could certainly affect consumer purchasing decisions."  The warning letters also state that consumers often did not know they would be required to pay resort fees in addition to the quoted hotel rate.

78.    The FTC stated, "the 'total price' or 'estimated price' quoted to consumers includes only the room rate and applicable taxes. At some of these sites, the applicable resort fee is listed nearby, but separate from, the quoted price. In others, the quoted price is accompanied by an asterisk that leads consumers to another location at the site – sometimes on the same page, sometimes not – where the applicable resort fee is disclosed, typically in fine print."

79.    According to the FTC, "[t]hese practices may violate the law by misrepresenting the price consumers can expect to pay for their hotel rooms. We believe that online hotel reservation sites should include in the quoted total price any unavoidable and mandatory fees, such as resort fees, that consumers will be charged to stay at the hotel. While a hotel reservation

site may breakdown the components of the reservation estimate (*e.g.*, room rate, estimated taxes, and any mandatory, unavoidable fees), the most prominent figure for consumers should be the total inclusive estimate."

       **E.**    **Defendants' Pricing Scheme is Known to Be Deceptive**

    80.    Academic research into pricing schemes such as Defendants' refer to the scheme as "partitioned pricing," in which a product or service's price is divided into a base price (charged for the product or service itself), and mandatory surcharges associated with that product or service. Other commentators refer to such schemes as "drip pricing."

    81.    There are several reasons "drip pricing" or "partitioned pricing" harms consumers and has a negative effect on free and fair competition.

    82.    Framing prices via the use of "drip" or "partitioned" pricing has a powerful ability to influence and mislead, leading consumers to spend more than they intend to, or purchase a product that does not meet their needs, or a product that leads to another market-inefficient outcome. It also places honest competitors who do not engage in drip or partitioned pricing at a significant disadvantage.

    83.    Academic research has shown that consumers can be detrimentally influenced by the "base" price provided for a product or service, rather than ancillary fees that ultimately increase the total price.

    84.    Such research has shown that consumers perceive that products with "partitioned" prices have lower total costs than products using an equivalent combined price. Lower price perceptions lead to higher demand for the "partitioned" price product or service—at an unfair advantage to honest sellers.

    85.    Academic research has shown that when reasonable consumers form judgments or

beliefs about prices, they often "anchor" on numeric information they see initially—and often fail to adjust sufficiently for additional information regarding surcharges. In other words, it is known that because of human nature, reasonable consumers grab on to the "headline" price, then fail to adjust their perception of this price.

86.    "Partitioned" or "drip" pricing unfairly exploit this reality, artificially creating perceptions of lower prices and taking advantage of consumers.

87.    If reasonable consumers shopping for a hotel initially see a low "partitioned" price that does not include certain mandatory charges, and form a belief that it is better than a competitor's rate, then even if the consumers see later surcharges that raise the total price much higher, they are likely to keep their original belief that the partitioning hotel's rates are comparatively better.

88.    Academic research has shown that "partitioned" or "drip" pricing is beneficial to sellers because disclosing total cost components separately positions their products or services more favorably when consumers comparison shop— especially when they shop online.

89.    It is well known in the hotel and resort industry that consumers usually decide where to stay based on the room price that is quoted to them online. Defendants therefore use partitioned pricing to attract more guests and more sales, and to give them an unnatural and unfair advantage over competitors who choose to price transparently.

90.    It is highly unusual for sellers in e-commerce in general, and in the hotel industry specifically, to omit a true total price through the purchase process. For example, while many online purchases (for example, from Amazon.com and similar sites, or on car rental websites) feature partitioned pricing, the standard practice is to provide—at least at some point during the purchase process—a true total cost that includes all "partitioned" charges. Defendants' failure to

do this anywhere in the booking process or confirmation process made its unfair partitioned pricing even more damaging to fair competitors and consumers.

## FIRST CLAIM FOR RELIEF
### Breach of Contract
**(On Behalf of the Classes)**

91.     Plaintiff repeats and realleges each and every allegation contained above as though fully set forth herein.

92.     Plaintiff and the Defendants contracted for hotel room stays.

93.     The contract is memorialized in a post-booking email confirmation from Priceline, which bound both Priceline and Hilton, and provided Plaintiff the right to stay at an identified Hilton hotel for a total charge, including taxes and fees.

94.     Prior to the issuance of the booking contract, Plaintiff was not informed of the identity of the hotel.

95.     The contract nowhere provided for resort fees to be charged.

96.     Defendants breached the contract when they charged Plaintiff additional amounts for mandatory resort fees.

97.     Plaintiffs and members of the Classes have performed all, or substantially all, of the obligations imposed on them under the Booking Contract.

98.     Plaintiff and members of the Classes have sustained damages as a result of the breach of the contract.

## SECOND CLAIM FOR RELIEF
### Breach of the Covenant of Good Faith and Fair Dealing
**(On Behalf of the Classes)**

99.     Plaintiff repeats and realleges each and every allegation contained above as though fully set forth herein.

100.    Plaintiff and the Defendants have contracted for hotel room stays.

101.    Good faith is an element of every contract pertaining to the assessment of fees and penalties. Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

102.    Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

103.    Defendants have breached the covenant of good faith and fair dealing in the booking contract through their assessment of resort fees without a contractual basis to do so.

104.    To the extent it is determined that representations made during the booking and bidding process—but prior to contract formation—became part of the contract between Plaintiff and Defendants, Defendants also breached the covenant of good faith and fair dealing.

Specifically, Defendants represented that resort fees "may" be assessed, when in reality Defendants knew that it was a <u>certainty</u> resort fees would be assessed at particular hotels.

105.    Plaintiffs and members of the Classes have performed all, or substantially all, of the obligations imposed on them under the Booking Contract.

106.    Plaintiffs and members of the Classes have sustained damages as a result of the Defendants' breach of the covenant of good faith and fair dealing.

**<u>THIRD CLAIM FOR RELIEF</u>**
**<u>Tortious Interference With Contract</u>**
**(Against Hilton, On Behalf of the Hilton Sub-class)**

107.    With respect to Hilton only, Plaintiff pleads this count in the alternative to Counts I and II.

108.    Plaintiff and Priceline contracted for a hotel stay at a Hilton hotel.

109.    As part of that contract, Plaintiff and the class members are entitled to, *inter alia*, use of a Hilton hotel room without further mandatory charges.

110.    At all times, Hilton was aware of the existence of the contract between, on the one hand, Plaintiff and the class members and, on the other hand, Priceline.

111.    Hilton tortiously interferes with this contractual relationship and prevents Plaintiff and the class members from obtaining the full benefits of this contractual relationship with Priceline.

112.    The Priceline Booking Contracts nowhere authorize Hilton to charge excessive and unreasonable administrative fees and civil penalties.

113.    Therefore, the Hilton tortiously interfered with the performance of the Priceline Booking Contract.

114.    Hilton's tortious interference with the contract between Plaintiff and the class

members and Priceline has resulted in an actual breach of these contracts because, as a result of Hilton's tortious interference, Plaintiff has been assessed resort fees not authorized by the contract.

115.    As a direct, proximate, and foreseeable result of Hilton's tortious interference with Plaintiff and the class members' contracts with Priceline, Plaintiffs and the class members have been legally injured and sustained damages by not receiving the full benefit of their contractual bargain.

116.    Plaintiff and members of the Hilton Subclass have performed all, or substantially all, of the obligations imposed on them under the Booking Contract.

117.    Plaintiff and members of the Hilton Subclass have sustained damages as a result of Hilton's tortious interference with the Booking Contract.

**FOURTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**(Against Priceline and Hilton, on Behalf of the Class)**

118.    Plaintiff repeats Paragraphs 1 through 90 as if fully stated herein.

119.    The post-booking confirmation provided by Priceline to Plaintiff  Singer granted Plaintiff Singer the right to stay two nights at the El Conquistador Resort for a total of $488.68.

120.    Defendants were unjustly enriched when it failed to provide Plaintiff Singer the right to stay two nights at the El Conquistador Resort for a total of $488.68.  Instead, Plaintiff Singer was required to pay an additional $30 to enjoy that previously promised hotel stay.

121.    Defendants knowingly received and retained wrongful benefits and funds from Plaintiff and members of the Classes.  In so doing, Defendants acted with conscious disregard for the rights of Plaintiff and members of the Classes.

122.    As a result of Priceline's wrongful conduct as alleged herein, Defendants have

been unjustly enriched at the expense of, and to the detriment of, Plaintiff and members of the Classes.

123.    Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

124.    Under the common law doctrine of unjust enrichment, it is inequitable for Defendants to be permitted to retain the benefits they received, and are still receiving, without justification, from the imposition of resort fees on Plaintiff and members of the Classes in an unfair, unconscionable, and oppressive manner. Defendants' retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

125.    The financial benefits derived by Defendants rightfully belong to Plaintiff and members of the Classes. Defendants should be compelled to disgorge in a common fund for the benefit of Plaintiff and members of the Classes all wrongful or inequitable proceeds received by it. A constructive trust should be imposed upon all wrongful or inequitable sums received by Defendants traceable to Plaintiff and the members of the Classes

126.    Plaintiff and members of the Classes have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Classes demand a jury trial on all claims so triable and judgment as follows:

1.    Declaring Defendants' resort fee policies and practices to be wrongful, unfair and unconscionable;

2.    Restitution of all resort fees paid to Defendants by Plaintiff and the Classes, as a result of the wrongs alleged herein in an amount to be determined at trial;

3.    Disgorgement of the ill-gotten gains derived by Defendants from its misconduct;

4.      Actual damages in an amount according to proof;

5.      Punitive and exemplary damages;

6.      Pre-judgment interest at the maximum rate permitted by applicable

law;

7.      Costs and disbursements assessed by Plaintiff and the Classes in  connection with

this action, including reasonable attorneys' fees and costs pursuant  to applicable law; and

8.      Such other relief as this Court deems just and proper.


Dated: July 17, 2015                                Respectfully submitted,

                                                      /s/ Robert A. Izard
                                                    Robert A. Izard
                                                    Mark P. Kindall
                                                    **IZARD NOBEL LLP**
                                                    29 South Main Street
                                                    Suite 305
                                                    West Hartford, CT 06107
                                                    Tel: (860) 493-6292
                                                    Fax: (860) 493-6290

                                                    Jeffrey D. Kaliel
                                                    *(pro hac vice forthcoming)*
                                                    **TYCKO & ZAVAREEI LLP**
                                                    2000 L Street NW
                                                    Suite 808
                                                    Washington, DC 20036
                                                    Tel: (202) 973-0900
                                                    Fax: (202) 973-0950