**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

ADAM SINGER, individually and on behalf of all other persons similarly situated,
Plaintiff,

v.

THE PRICELINE GROUP, INC., et al.,
Defendants.

No. 15-cv-1090 (VAB)

**RULING ON PENDING MOTIONS**

Plaintiff, Adam Singer, has brought suit against Defendant, The Priceline Group, Inc. ("Priceline"), alleging breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment claims, following the additional costs incurred on his vacation.[1] Priceline moved to dismiss the Class Action Complaint [Doc. No. 30], and Singer subsequently moved for leave to file an Amended Class Action Complaint [Doc. No. 54]. The Court addresses these motions in turn and, for the reasons that follow, the motion to dismiss is **GRANTED** and the motion for leave to amend is **DENIED**.

## I. FACTUAL BACKGROUND[2]

Priceline is a company that facilitates online travel reservations. Customers access www.priceline.com and can choose from an array of travel reservation services such as hotel, airline, and rental car reservations. In 2011, Priceline offered both a traditional price-disclosed model, in which the customer would select a reservation from a listing of available reservations,

---

[1] Plaintiff initially also sued Hilton Worldwide, Inc., but Mr. Singer and Hilton Worldwide, Inc. jointly filed a Stipulation of Voluntary Dismissal with Prejudice, Doc. No. 34, on October 23, 2015.

[2] All background information is taken from the Complaint or proposed Amended Complaint, unless otherwise noted. All allegations in the complaints are accepted as true for purposes of the motion to dismiss. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) ("it is well established that, in passing on a motion to dismiss, . . . the allegations of the complaint should be construed favorably to the pleader").

and the Name Your Own Price® ("NYOP") service, which would allow a customer to bid a certain dollar amount for a hotel reservation on a given date in a certain geographic area and at a certain "star level" or class of service.

Under the NYOP service, Priceline promised to "match" the customer's bid with a hotel. The name of the hotel is not disclosed to the customer in advance of a bid, only after the bid has been accepted. Once the bid has been accepted, the customer's credit card is immediately charged and the customer's reservation cannot be cancelled, changed, or transferred and refunds are not allowed.

Adam Singer alleges that he used Priceline's NYOP service to secure a hotel room reservation on February 24, 2011. Singer sought to pay $107.00 per room per night for two rooms from Saturday February 26, 2011 until Monday February 28, 2011. Relying on the information provided by Singer but before he confirmed his bid, Priceline presented him with a final webpage screen displaying the following information:

| | |
|---|---|
| Offer Price Per Room Per Night: | $107.00 |
| Subtotal: | $428.00 |
| Taxes and Service Fees: | $60.68 |
| Total Charges*: | $488.68 |

*Prices are in US Dollars

Mot. to Dismiss, Ex. 1 [Doc. No. 30-2].

This webpage also included the following information under the heading "Important Information":

- If priceline accepts your price, priceline will book your reservation in a property with an equal or higher star level than you requested. The hotel that is selected may or may not be one that you have seen during a hotel search on priceline. Any sorting or filtering options previously used will not apply to this Name Your Own Price request. Priceline will immediately charge your credit card the total cost of your stay. Rooms purchased through priceline cannot be cancelled, changed or transferred

and refunds are not allowed. If your offer is not accepted, your credit card will not be charged.

- The reservation holder must present a valid photo ID and credit card at check-in. The credit card is required for any additional hotel specific service fees or incidental charges or fees that may be charged by the hotel to the customer at checkout. These charges may be mandatory (e.g., resort fees) or optional (parking, phone calls or minibar charges) and are not included in your offer price.

*Id*. Below the "Important Information" section, Singer had to initial a box adjacent to the following statement: "I have read, accept and agree to abide by priceline.com's terms and conditions and privacy policy." *Id.*

A hyperlink on this webpage, when clicked, would take a user of the website to another webpage containing the "Priceline.com Incorporated Web Site Terms & Conditions" ("Terms & Conditions"). The subheading of this separate document was, "Agreement between User and priceline.com Incorporated". The Terms & Conditions contained dozens of sections, and included the following language relevant to this case:

> The captions in this Agreement are only for convenience, and do not, in any way, limit or otherwise define the terms and provisions of this Agreement.
>
> This Agreement, and the related parts of this Agreement relating to each service represent the entire agreement between you and each Covered Party regarding your use of this Site and supersede any prior statements, representations, or prior versions of these Terms and Conditions relating to the use of the Site that were displayed on this Site before. We reserve the right to modify, revise or update this Agreement from time to time by updating this posting. Your continued use of this Site will be subject to the terms of this Agreement in effect at the time of your use. Certain provisions of this Agreement may be superseded by expressly designated legal notices or terms located elsewhere on this Site, which will be adequately brought to your attention. In the event that any provision of this Agreement is determined to be unenforceable or invalid, such provision shall nonetheless be enforced to the fullest extent permitted by applicable law, and such determination shall not affect the validity and enforceability of any other remaining provisions. To the extent permitted by applicable law, the internal laws of the State of Connecticut shall govern the performance of this Agreement and you consent and submit to the exclusive jurisdiction of the state and federal courts located in Fairfield County, Connecticut, in all questions and controversies arising out of your use of this Site and this Agreement. To the extent permitted by

> applicable law, any claim or cause of action arising from or relating to your use of this Site and/or this Agreement must be brought within two (2) years from the date on which such claim or action arose or accrued.

Terms & Conditions [Doc. No. 30-3] § I.S. "Miscellaneous";

> 1. All hotel reservations are non-cancelable, non-refundable, non-changeable and non-transferable by you. Once you purchase a reservation, your method of payment will be charged for the amount shown - regardless of whether or not the reservation is used. Credit will not be given for any unused reservations and cannot be used toward any future purchases;
>
> 2. Once a priceline.com Request is submitted, it cannot be modified by you; and
>
> 3. Upon check-in, guests must present a valid ID and credit card . . . in their name that is consistent with the transactional details provided to priceline.com (the amount of available credit required will vary by hotel). . . .
>
> You agree that if a hotel accepts your offer, priceline.com will confirm the reservation and charge the entire amount of the stay, including applicable Taxes and Fees (as described below) disclosed to you before submitting an offer, to your method of payment. The price you name is per night and does not include priceline.com's charge to you for Taxes and Fees.

*Id.* § II.C.3.a. "Additional Restrictions"; and

> In connection with facilitating your hotel transaction, we will charge your method of payment for Taxes and Fees. This charge includes an estimated amount to recover the amount we pay to the hotel in connection with your reservation for taxes owed by the hotel including, without limitation, sales and use tax, occupancy tax, room tax, excise tax, value added tax and/or other similar taxes. In certain locations, the tax amount may also include government imposed service fees or other fees not paid directly to the taxing authorities but required by law to be collected by the hotel. The amount paid to the hotel in connection with your reservation for taxes may vary from the amount we estimate and include in the charge to you. The balance of the charge for Taxes and Fees is a fee we retain as part of the compensation for our services and to cover the costs of your reservation, including, for example, customer service costs. The charge for Taxes and Fees varies based on a number of factors including, without limitation, the amount we pay the hotel and the location of the hotel where you will be staying, and may include profit that we retain.
>
> Except as described below, we are not the vendor collecting and remitting taxes to the applicable taxing authorities. Our hotel suppliers, as vendors, bill all applicable taxes to us and we pay over such amounts directly to the vendors. We are not a co-vendor associated with the vendor with whom we book or reserve our customer's travel arrangements. . . .

> For transactions involving hotels located within certain jurisdictions, the charge to your debit or credit card for Taxes and Fees includes an additional payment of tax that we are required to collect and remit to the jurisdiction for tax owed on amounts we retain as compensation for our services.
>
> Depending on the property you stay at you may also be charged (i) certain mandatory hotel specific service fees, for example, resort fees (which typically apply to resort type destinations and, if applicable, may range from $10 to $40 per day), energy surcharges, newspaper delivery fees, in-room safe fees, tourism fees, or housekeeping fees and/or (ii) certain optional incidental fees, for example, parking charges, minibar charges, phone calls, room service and movie rentals, etc.. These charges, if applicable, will be payable by you to the hotel directly at checkout. When you check in, a credit card or, in the hotel's discretion, a debit card, will be required to secure these charges and fees that you may incur during your stay. Please contact the hotel directly as to whether and which charges or service fees apply.

*Id.* § II.C.3.b. "Charges for Taxes and Service Fees".

The Priceline website did not require a customer to click through the hyperlink to the Terms & Conditions in order to place a bid. Singer alleges not only that he did not have any knowledge of the above-quoted Terms & Conditions, but also that he did not have notice that the Terms & Conditions contained any relevant disclosures or contract terms.

Singer elected to make the bid. Priceline immediately accepted this bid and matched Singer with two rooms at the Waldorf Astoria El Conquistador Resort, a Hilton Hotel in Fajardo, Puerto Rico (the "Hilton"). Priceline displayed this information to Singer on a webpage confirmation screen, and it also sent Singer a confirmation email. The email, sent by "Priceline Customer Service," stated: "Thank you for booking your hotel with priceline. As a courtesy below is a copy of the hotel itinerary you recently reviewed on-line at priceline." Compl. Ex. A [Doc. No. 1-1]. The email also included a "Summary of Charges," which included the following information:

| | |
|---|---|
| Room Cost (avg. per room, per night): | $107.00 (USD) |
| Number of Rooms: | 2 |
| Number of Nights: | 2 |
| Room Subtotal: | $428.00 (USD) |

| | |
|---|---|
| Taxes and Fees: | $60.68 (USD) |
| **Total Room Cost:** | **$488.68 (USD)** |

*Id*.

At this time, Singer allegedly believed that his winning bid, as described in the confirmation email, would cover the entire cost of his stay. Two days after purchasing his reservation from Priceline, Singer and his traveling companion commenced a two-night stay in rooms at the Hilton, where he was charged a mandatory resort fee. He allegedly learned of the mandatory resort fee only after his arrival at the Hilton, when the hotel informed him that it would be charging him this additional amount.

In his Class Action Complaint, Singer alleges that Priceline had actual knowledge that the hotel bid it was offering him did not include a mandatory, per-day resort fee that the hotel would charge him at the end of his hotel stay, as well as actual knowledge of the amount of that mandatory fee, and that it did not share any of this information with him at any point, either prior to or after his bid. Singer further alleges that he did not discover that Priceline had actual knowledge of the Hilton's resort fee until 2015, and that Priceline had intentionally concealed its knowledge of the fee for purposes of delaying his ability to file a complaint in this action.

Singer also alleges that, in November 2012, the Federal Trade Commission ("FTC") issued a letter warning that online reservation sites may violate the law by providing a deceptively low estimate of what consumers can expect to pay for their hotel rooms. In the letter, the FTC stated that hidden resort fees could affect consumer purchasing decisions had their existence been known, and that in order to comply with the law, "online hotel reservation sites should include in the quoted total price any unavoidable and mandatory fees, such as resort fees, that consumers will be charged to stay at the hotel." Compl. ¶ 79 (quotation marks omitted).

Singer filed his Class Action Complaint on July 17, 2015. On March 24, 2016, Singer moved to amend his Class Action Complaint. The proposed Amended Complaint removes the claims against former defendant Hilton Worldwide, Inc.; incorporates a declaration from Hilton Worldwide, Inc. regarding the information it provided to Priceline regarding mandatory resort fees prior to Singer making a NYOP bid; adds allegations regarding the precise representations made on Priceline's website during the booking process; and clarifies allegations regarding Priceline's alleged fraudulent concealment of the facts giving rise to the causes of action in this litigation.

## II. MOTION TO DISMISS

### A. STANDARD OF REVIEW

A motion to dismiss for failure to state a claim under Rule 12(b)(6) is designed "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 158 (2d Cir. 2003) (citations omitted). When deciding a Rule 12(b)(6) motion to dismiss, a court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and decide whether it is plausible that the plaintiff has a valid claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although "detailed factual allegations" are not required, a complaint must offer more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555, 557 (2007). Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (quotation marks omitted).

**B. BREACH OF CONTRACT**

"The elements of a breach of contract action are the formation of an agreement, performance by one party, breach of the agreement by the other party and damages." *Summerhill, LLC v. City of Meriden*, 162 Conn. App. 469, 474 (2016) (quotation marks omitted). "At the motion to dismiss stage, a district court may dismiss a breach of contract claim only if the terms of the contract are unambiguous. Whether or not a writing is ambiguous is a question of law to be resolved by the courts." *Orchard Hill Master Fund Ltd. v. SBA Communications Corp.*, No. 15-3462, slip. op. at 9 (2d Cir. July 21, 2016) (quotation marks and citations omitted). Since the express language of the contract between Priceline and Singer provided for the possible payment of hotel resort fees, in addition to the offer price, Priceline's Motion to Dismiss must be granted on Singer's breach of contract claim.

Construing the factual allegations in the Class Action Complaint in the light most favorable to Singer, the Complaint fails to state a claim for breach of contract. "When the language [of a contract] is clear and unambiguous . . . the contract must be given effect according to its terms, and the determination of the parties' intent is a question of law." *Nation-Bailey v.*

*Bailey*, 316 Conn. 182, 192 (2015).  Moreover, "the language used [in a contract] must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract."  *Id.*  The contract between the parties stated: "If priceline accepts your price, priceline will book your reservation in a property with an equal or higher star level than you requested. . . .  Priceline will immediately charge your credit card the total cost of your stay.  Rooms purchased through priceline cannot be cancelled, changed, or transferred and refunds are not allowed."  Doc. No. 30-2.  It also stated: "The reservation holder must present a valid photo ID and credit card at check-in.  The credit card is required for any additional hotel specific service fees or incidental charges or fees that may be charged by the hotel to the customer at checkout.  These charges may be mandatory (e.g., resort fees) or optional (parking, phone calls or minibar charges) and are not included in your offer price."  *Id*.  The contract further broke down the "Total Charges" into "Offer Price Per Room, Per Night" and "Taxes and Services Fees."  *Id*.

In other words, the contract explicitly contemplates that "additional hotel specific service fees . . . may be charged by the hotel to the customer at checkout."  It also explicitly states that "[t]hese charges may be mandatory . . . and are not included in your offer price."  As a result, the mandatory resort fees incurred by Singer from staying at the Hilton in Puerto Rico, in addition to the offer price and taxes and service fees paid to Priceline, were consistent, rather than in conflict, with the contract's terms.

Therefore, the Motion to Dismiss is **GRANTED** as to Plaintiff's breach of contract claim.

### C. BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

Singer also alleges that Priceline failed to book him at a hotel whose price matched his offer. Instead, he alleges, Priceline knowingly matched him with a hotel whose total price would exceed his offer when mandatory fees were added and, therefore, breached the implied covenant of good faith and fair dealing. The Court disagrees.

Connecticut law recognizes "that the duty of good faith and fair dealing is a covenant implied into a contract or a contractual relationship." *De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, 269 Conn. 424, 432 (2004) (quotation marks omitted). "The covenant of good faith and fair dealing presupposes . . . that what is in dispute is a party's discretionary application or interpretation of a contract term." *Renaissance Mgmt. Co. v. Connecticut Hous. Fin. Auth.*, 281 Conn. 227, 240 (2007). "Essentially it is a rule of construction designed to fulfill the reasonable expectations of the contracting parties as they presumably intended. The principle, therefore, cannot be applied to achieve a result contrary to the clearly expressed terms of a contract, unless, possibly, those terms are contrary to public policy." *Magnan v. Anaconda Indus., Inc.*, 193 Conn. 558, 567 (1984).

Furthermore,

> [t]o constitute a breach of the implied covenant of good faith and fair dealing, the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith. Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. Bad faith means more than mere negligence; it involves a dishonest purpose.

*Id.* at 433 (quotation marks and citations omitted). "[B]ad faith may be overt or may consist of inaction, and fair dealing may require more than honesty." *Elm St. Builders, Inc. v. Enter. Park*

*Condo. Ass'n, Inc.*, 63 Conn. App. 657, 667 (2001) (quoting 2 Restatement (Second), Contracts § 205, cmt. (d)); *see also Landry v. Spitz*, 102 Conn. App. 34, 43 (2007) ("a party who evades the spirit of the contract may be liable for breach of the implied covenant of good faith and fair dealing") (quoting 23 S. Williston, Contracts (4th Ed. Lord 2002) § 63:22, p. 508) (quotation marks omitted).

In order to survive a motion to dismiss on such a claim, a plaintiff must allege the requisite state of mind. *See, e.g.*, *MedPricer.com Inc. v. Becton, Dickinson & Co.*, No. 3:13-cv-1545, 2014 U.S. Dist. LEXIS 101609, *6, 2014 WL 3700992, *3 (D. Conn. July 25, 2014) (denying motion to dismiss because "[w]hether particular conduct violates or is consistent with the duty of good faith and fair dealing necessarily depends upon the facts of the particular case, and is ordinarily a question of fact to be determined by the finder of fact"); *Colon v. Commonwealth Annuity & Life Ins. Co.*, No. 3:08-cv-79, 2008 U.S. Dist. LEXIS 40886, *6-7, 2008 WL 2185923, *2 (D. Conn. May 21, 2008) (denying motion to dismiss because "[i]t is not clear from the complaint that there are no circumstances fitting [the allegations] that would be so egregious and demonstrative of dishonest purpose as to show bad faith on the part of Defendants" and "[a] motion to dismiss is not the place to assess the strength of Plaintiff's case or the likelihood of her prevailing"). "Bad faith is usually proved circumstantially because it is usually, by definition, 'furtive,'" and thus a plaintiff need not set forth "a more specific or objective set of facts . . . in the complaint" in order to survive a motion to dismiss. *Antonacci v. Darwin Select Ins. Co.*, No. HHBCV085009088, 2009 Conn. Super. LEXIS 1093, *4, 2009 WL 1424676, *2 (Conn. Super. Ct. Apr. 27, 2009).

Singer's claim for breach of the covenant of good faith and fair dealing fails to state a claim upon which relief can be granted. First, as discussed *supra*, "[g]ood faith performance or

enforcement of a contract emphasizes . . . consistency with the justified expectations of the other party." *Warner v. Konover*, 210 Conn. 150, 155. "[R]easonable or justified expectations, in turn, are to be determined by considering the various factors and circumstances that surround the parties' relationship and thereby shape or give contour to the expectations in the first instance." *Hirschfeld v. Machinist*, 151 Conn. App. 414, 431 (2014) (Flynn, J. dissenting) (citing 23 S. Williston Contracts (4th Ed. Lord 2002) § 63:22, p. 514).

Before Singer entered his bid, Priceline informed him that, if his bid were to be accepted, he would be required to "present a . . . credit card at check-in . . . for any additional hotel specific service fees or incidental charges" that "may be mandatory (e.g., resort fees) or optional (parking, phone calls or minibar charges) and are not included in your offer price." Doc. No. 30-2. Thus, as a matter of law, it was not reasonable or justified for Singer to expect that he would not be charged a resort fee by the hotel. Priceline disclosed that possibility in clearly expressed terms.

Nevertheless, Singer argues that Priceline violated its duty of good faith and fair dealing by including hotels that charged resort fees in its search for a hotel that met Singer's specified criteria. Under Connecticut law, even when the discretion conferred by a contract "is exceedingly broad, modern contract principles of good faith and fair dealing recognize that even contractual discretion must be exercised for purposes reasonably within the contemplation of the contracting parties." *Economos v. Liljedahl Bros.*, 279 Conn. 300, 306-07 (2006); *see also Artman v. Output Techs. Sols. E. Region, Inc.*, No. CV 000595362S, 2000 Conn. Super. LEXIS 1698, *5-6, 2000 WL 992166, at *2 (June 30, 2000) (contracting party must "exercise his discretion fairly in order to comply with the implied covenant of good faith and fair dealing that attaches to every contract").

Priceline, however, never represented that it would distinguish between hotels that charged resort fees and those that did not charge resort fees in searching for a hotel that would accept Singer's bid price. In fact, Priceline's contract with Singer expressly included language providing that, if there were such a fee, Plaintiff would be responsible for paying it, above and beyond the offer price. *See* Doc. No. 30-2 ("The reservation holder must present a . . . credit card at check-in . . . required for any additional hotel specific service fees . . . that may be charged by the hotel to the customer at checkout. These charges . . . are not included in your offer price."). Given the contract's express language, Priceline did not undertake an obligation—either an express or implied one—to eliminate, or even limit, the hotel that it would ultimately book for Singer to one that did not charge an additional mandatory resort fee.

In short, the parties expressly contemplated the imposition of other costs by the hotel beyond the offer price and Singer, by agreeing to enter into the contract, agreed to be responsible for the payment of such costs. Thus, Priceline's booking of a hotel that charged a mandatory resort fee cannot be the basis for a good faith and fair dealing claim. Accordingly, the Motion to Dismiss is **GRANTED** as to Plaintiff's breach of the covenant of good faith and fair dealing claim.

**D. UNJUST ENRICHMENT**

Singer's final claim is a quasi-contractual one—unjust enrichment. Under this legal theory, "[w]herever justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract, restitution of the value of what has been given must be allowed." *Town of New Hartford v. Connecticut Res. Recovery Auth.*, 291 Conn. 433, 451 (2009) (quoting 26 S. Williston, Contracts (4th Ed. 2003) § 68:4, p. 57) (quotation marks omitted). "'It is often said that an express contract between the parties

precludes recognition of an implied-in-law contract governing the same subject matter.'"[3] *Meaney v. Connecticut Hosp. Ass'n, Inc.*, 250 Conn. 500, 517 (1999) (quoting 1 E. Farnsworth, Contracts (2d Ed.1998) § 2.20). "Nevertheless, when an express contract does not fully address a subject, a court of equity may impose a remedy to further the ends of justice." *Town of New Hartford*, 291 Conn. at 455.

In this case, the express contract does fully address the subject of the cost of the hotel stay, explicitly stating that the hotel may charge additional fees directly to the customer. Therefore, Plaintiff's claim of unjust enrichment is precluded, and the Motion to Dismiss is **GRANTED** as to the unjust enrichment claim

## III. MOTION FOR LEAVE TO AMEND

Because Plaintiff seeks to amend the Complaint more than 21 days after Defendant filed its Motion to Dismiss, Plaintiff may amend the Complaint "only with the opposing party's written consent or the court's leave," which should be freely given "when justice so requires." Fed. R. Civ. P. 15(a). A motion for leave to amend the complaint can be denied, however, if the defendant can demonstrate the futility of the amendment. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). The Court denies leave to amend the Class Action Complaint here, because the proposed amendments would be futile.

"In order to be considered futile, the complaint as amended would fail to withstand a motion to dismiss for failure to state a claim." *Senich v. Am.-Republican, Inc.*, 215 F.R.D. 40, 41 (D. Conn. 2003). However, "while 'futility' is a valid reason for denying a motion to amend, this is true only where it is beyond doubt that the plaintiff can prove no set of facts in support of his amended claims." *Pangburn v. Culbertson*, 200 F.3d 65, 70-71 (2d Cir. 1999) (quotation

---

[3] "[A]n implied in law contract is another name for a claim for unjust enrichment." *Town of New Hartford*, 291 Conn. at 455 n.25.

marks and citations omitted).

Singer proposes to amend the Class Action Complaint by adding allegations regarding (1) Priceline's alleged knowledge of the certainty of the mandatory resort fee at the time of the booking of Singer's hotel stay at the Hilton and Priceline's allegedly purposeful concealment of that information and (2) Priceline's alleged misleading representations concerning how it actually went about matching consumers to hotels through its NYOP service.  Singer argues that the former strengthens his claim for breach of the covenant of good faith and fair dealing and that the latter firmly establishes his breach of contract claim.  These proposed additions, however, would do nothing to save Singer's claims.

First, even if Priceline knew of and failed to disclose or take into account the Hilton's mandatory resort fee when selecting a hotel for Singer, it would not have violated Defendant's duty of good faith and fair dealing.  The contract between the parties expressly stated that such a fee could be imposed.  The issue of whether Priceline knew about the fee is irrelevant.  Under the express terms of the contract, Priceline was free to match Singer with any hotel that would accept Singer's bid price, regardless of the existence of any additional fees that would be charged later.

Second, Priceline did not misrepresent what it would do for Singer under the terms of the contract.  The contract explicitly defines the bid price as one that does not include additional fees that are charged by the hotel.  Therefore, Singer's proposed additions to the Complaint do not remedy the fatal flaws in his breach of contract claim.

Accordingly, Plaintiff's Motion for Leave to File Amended Class Action Complaint is **DENIED** because the proposed "Amended Class Action Complaint" [Doc. No. 54-1] would, for the same reasons as discussed *supra* with respect to the original Class Action Complaint, be

dismissed in its entirety for failure to state a claim.

## IV. CONCLUSION

Defendant's motion to dismiss [Doc. No. 30] is **GRANTED**, and Plaintiff's motion to amend [Doc. No. 54] is **DENIED**.

**SO ORDERED** at Bridgeport, Connecticut, this 22nd day of July, 2016.

/s/ Victor A. Bolden
Victor A. Bolden
United States District Judge